Next case on the call, agenda number 5, is number 129289, People of the State of Illinois v. Ramon Torres. Counsel for the appellant, are you prepared to proceed? Good morning, my name is Deepa Punjabi, and I represent the defendant appellant, Ramon Torres. In this case, Mr. Torres argues that he was deprived of the effective assistance of trial counsel because counsel failed to move to exclude Mr. Torres' positive chlamydia test results from both 2013 and 2016, and this medical information was used as evidence against him at his trial for predatory criminal sexual assault of a child. Mr. Torres argued specifically that counsel should have moved to exclude his medical information because it was protected by the physician-patient privilege, and the test results did not fall under any of the enumerated statutory exceptions to the privilege. And before I get into any discussion of the specific exceptions to the privilege, I just wanted to quickly note that the type of medical information at issue here, one's STD status, that is precisely the kind of medical information that most directly implicates the purpose of the privilege, which is to keep potentially embarrassing medical information private, so as to incentivize people to seek diagnosis and treatment and to facilitate that diagnosis and treatment, and this is in part to avoid the kind of serious public health problems that can arise when highly transmissible diseases, such as the one here, go undetected and continue to spread. So there's an important public policy purpose here behind the privilege that I don't want to lose sight of as we get into the nuances of the statutory construction arguments here. Now, the first district court below appellate court found that Mr. Torres' 2013 test results were admissible under Section 88027, which is an exception to the privilege that provides as follows. No physician or surgeon shall be permitted to disclose any information he or she has acquired in attending any patient, except only, and I'm skipping down to Subsection 7 now, except only in action of civil or criminal arising from the filing of a report in compliance with the Abuse and Neglected Child Reporting Act, which I'm going to call the ANCRA. So there are two competing interpretations of this provision in this case. The first district has interpreted 88027 to accept from the privilege medical information in any action or legal proceeding arising from the report, a report filed in compliance with the ANCRA. And counsel, how did the defendant happen to get to the hospital to have his blood drawn for the diagnosis of chlamydia to be made? How did that come about? I mean, did he go on his own? Wasn't he ordered to go and get this test done by DCFS? He was ordered and he was requested, I mean, he has the right to refuse, but sure, he was ordered in 2016 and not in 2013. Okay. In 2013. Well, let's talk about 2016. We're not in there yet. But is that the same as if the patient went on his own to, you know, get his blood pressure checked or something? If he is requested to go by DCFS, as part of their normal investigation, how does the physician-patient privilege come into play in that scenario? It comes into play because under the interpretation that the, we urge here, and the third district used in people v. bonds, the exception applies to information arising from, you know, the patient's blood pressure, the patient's blood pressure, the patient's blood temperature, information arising out of the report that would be needed to be in compliance with the ANCRA. So... Well, let me ask you, give you a hypothetical. If he was asked to give a urine drop for a drug screen, would you say that whatever the results are of that urine drop, although he was ordered to do that as part of a DCFS plan, that he would not be required to disclose that to DCFS? Well, I think the, you know, yes, he would be required to disclose that. So what's the difference? So here, I think here, also, he, I think, was probably aware that DCFS was going to... Well, I would think that if they suggested that he go, he would be aware that that's what they wanted. But what's the difference between if he was asked to give a urine drop for a drug screen and if he's asked to have a urine drop for a drug screen? Or if he's asked to have a smear done for a chlamydia test? What's the difference in terms of whether that's disclosable or whether it's covered by physician-patient privilege? I think the difference here is that Mr. Torres would have expected the privilege to apply and remain intact in this circumstance because Nurse Guzman did not merely evaluate him. She treated him for chlamydia once his condition was established, and then had expected the privilege to attach. I mean, he wouldn't know that she's treating him for a medical problem, but she's still not actually his medical provider. And his perspective matters because this Court has said that to constitute a waiver, there must be an intentional relinquishment or abandonment of a known right or privilege. And I don't think that's what this was here. I don't think it's clear that he... Well, let me just follow it up with one quick. So if he is requested to go and get a test for purposes of a DCFS evaluation, your argument taken to its logical extreme means that DCFS has no right to the results of that test. Is that your argument? No. My argument is that DCFS has the results, has a right to that result of that test, but that it cannot come in in a criminal trial. And I think this goes to, you know, he may have been aware that DCFS is going to get the results of these tests, but I don't know that that means he'd be aware this would aggregate his privilege completely in all future proceedings against him. And again, this is because to him, this is a treating provider. He did go to this provider for the purpose of treatment, did he? No. He tells the police and I think it's the evidence shows that he went for the purpose of, he acquiesced to the DCFS request for testing. Now there is some testimony that he did tell Nurse Guzman that he had also had an unprotected sexual encounter that he was concerned about. So it might be the case that there was a dual purpose, but it is true that he in fact, because DCFS asked him to do so, but that's still not information. He may have had the idea that DCFS may then be able to use this information in their own internal agency purposes, but where there's a treating provider, I don't think this court can find that he waived the privilege unless there's that knowledge. Counsel, when you're ordered to go, well, you're saying suggested, when you're ordered to go to a particular place for a particular test, how does that provider become converted to a treating provider? Did he have any prior patient provider relationship with the person that did the test? No, but I think from his perspective, there would have been a treating provider relationship because she provided treatment. At the very least, it's confusing from his perspective, and I think to find that he waived the privilege in this case by seeking treatment for a non-medical purpose, I think, you know, this, the court has to find that he acted with the purpose of removing the confidentiality of this information, and that can only happen if he understands the nature of the provider relationship, and these are at best confusing circumstances. In this instance, did your client reveal the results of the 2013 and the 2016 test results to the police during his confession? Well, he confirmed what the police already knew. This came out in a very leading way. The police, Detective Rodriguez testified that she had already reviewed Mr. Torres' medical records and found that there was no evidence that Mr. Torres' medical records had been used. And he disclosed it to them, is that correct? Only after Detective Rodriguez had said, you know, we've looked at your medical records, we know everything, and in that case, he's not, I would say in those circumstances, I would argue that he's not evincing an intent to relinquish the confidentiality of any  So you're not arguing that somehow his confession was involuntary, right? Yes, to be clear, I am not arguing that his confession was involuntary. So the specific question is, did he reveal the results of the test to the police, and your answer is yes. My answer is yes, he confirmed what it was clear the police already knew, and under those circumstances, there was no act evincing an intent to relinquish the confidentiality of his privileged medical information. And to constitute a knowing and intentional waiver, I think that's what you need. Some act evincing an intent to abandon the secrecy or confidentiality of his medical information. And I think it matters that this is a custodial interrogation, and to your point, Your Honor, there's no claim here that this was an objective interrogation, but even in an interrogation that's not illegally coerced, there are certain coercive pressures that are brought to bear, so given that setting, given that he knows he's telling the police information that they already have, I don't think you can find that he intentionally abandoned the secrecy of his medical information. Counsel, do you have any case law to back that theory up? That police say, you know, we've got this information, and he doesn't, you know, he's not required to say, wait a minute, I disagree, or, you know, what, you know, he basically confessed. He confessed to sexual contact, and he did say that he, he did, again, he did affirm to the police that he had, you know, tested positive, yes, he did, but, again, and the... He told the police a lot more than just about the test. He talked about, he confessed to the conduct of the... He did, yes, I don't mean to imply that that was the only part of his confession. He did, you know, but... So again, I'm always wanting to talk about, let's talk about the framework we're in here, right? Here, Mr. Torres fled and did not appear at his trial. That's correct. And so he was tried in absentia. His counsel represented him there. And then, of course, there's no issue about whether that was appropriate or not to try him when he fled. That's correct. He was convicted, and later arrested after he'd been sentenced, and now for the first time on appeal, this argument is raised in the context of ineffective assistance of counsel. He's claiming that even though he wasn't there, he fled, that his counsel was ineffective for not making the objections that you're talking about here. That's correct. Let's talk about the Strickland standard. The Strickland standard has two parts, of course, and part of it is about the competency of the lawyer, and I think that's what we're talking about in the legal question. Should the lawyer have made the kinds of objections that you're making here at the time of the trial? The other part of it, however, is whether or not there was prejudice when this testimony was admitted. And here we have, in evidence here, the victim, who was 4 years old at the time, but 10 years old when she testified, and testified in detail as to what her father had done to her, and then his videotaped confession, corroborating what she said. So how do we take all that into context if we're talking about an ineffective assistance of counsel? Well, I believe you're asking me about prejudice, about whether we can show sufficient Strickland prejudice. And, you know, no less than six witnesses testified that Mr. Torres tested positive for chlamydia, so it would be hard to characterize these results as anything other than an integral part of the state's case. And the repetitive nature of the evidence as part of the prejudice here, that it unfairly highlights the fact that Mr. Torres testified positive for chlamydia. And that he provided this damaging evidence. Now, it is true that Mr. Torres himself acknowledged to the police he had tested positive. And acknowledged the conduct. And it is true that he acknowledged the conduct. You know, he admitted genital-to-genital conduct with the child complainant here. And he admitted that he was not responsible for the ineffective assistance of counsel. Yes. So I think the confession, there was a little bit of a lack of clarity in the confession, in that he stated that the incident occurred in 2014. I think there was some evidence that came out that he said that the incident had occurred in 2014. He never accepted responsibility for J.T.'s 2016 results. So it's not clear the statement necessarily related to the incident charged or was another incident. The evidence comes out that two different times she was diagnosed with chlamydia, right? Yes. So his statement was about his contact, general contact with his daughter, but unclear which of the two times that she... Or it was unclear that it related to the charged conduct or that incident charged. But, you know, given J.T.'s inconsistencies in identifying her perpetrator, she doesn't point to Mr. Torres until the third interview. Given that, given that six witnesses testified to these medical test results, making it a very significant part of the state's case. And given the state's heavy reliance on this evidence throughout its closing arguments, I think there is at least a reasonable probability that a different outcome would have resulted absent counsel's error of failing to exclude these results. And again, part of this, it's not just whether there was sufficient evidence. It's the constant repetition of this evidence that unfairly highlighted this evidence against him. And that's where you find your prejudice, I think. Now, with respect to the manner in which Section 88027 should be interpreted, I think you have two competing interpretations here. And where the first, because we have two separate appellate districts reading this language and arriving at two different meanings, this demonstrates the statutory language here is ambiguous. And the case law states that when you have an ambiguous statute, this court should then be looking at things like the privileges, purpose, and the legislative intent. So the questions for this court are, what purpose does the physician-patient privilege serve? What is the purpose of the exception in 88027? And which of these competing interpretations actually balances or accounts for both? The purpose of the privilege in protecting medical privacy and the purpose of the exception in allowing information that a child has been abused to come to light. And I would submit that the interpretation used by the state does not strike any balance at all between the two. It gives the broadest possible meaning to the language of the exception, and its brief doesn't really even mention the purposes. But again, the legislature was trying to address important policy goals and trying to enact, protect medical privacy. And under the first district's approach, 88027 would accept from the privilege any medical information a party seeks to introduce to any person, even remotely pertinent to the case in a proceeding relating to a DCFS report. And that would be the case even if the person wasn't implicated in the DCFS report. And that is a broad gap for the legislature to be carving out into the privilege. And in contrast, the third district approach actually strikes a balance between the purpose of the privilege and the purpose of the exception, and actually gives effect to both legislative intents. Under this approach, the exception serves a discrete purpose, which is merely to release from the privilege the information a medical provider is required to report to be in compliance with the ANCRA, which is the information that the child has been abused. And this ensures that there is no conflict between the medical provider's duty of confidentiality and duty to report, and it also allows information that a child has been abused to come out and be in compliance with the ANCRA. And to come out and report in legal proceedings related to that reported child abuse. So in that approach, medical privacy is still largely protected, but information that a child has been abused can come to light. And here, Mr. Torres' test results, while relevant, were not required to be reported to be in compliance with the ANCRA. So his test results should not be held to be accepted from the privilege. This is particularly so with his 2013 test results, because that was completely unconnected to a DCFS investigation. But I would contend that the same logic applies to his 2016 test results. Neither of those test results would constitute information arising out of the report that would be needed to be in compliance with the ANCRA. And I see that I am running short on time. Were there any other questions I could answer for this court? Thank you very much. All right. Thank you. Counsel for the afternoon. Good morning, Your Honors. May it please the courts and counsel, I am Assistant Attorney General Eldad Malamuth on behalf of the people. This court should affirm, because defendant has not demonstrated that his counsel provided ineffective assistance of counsel, by declining to object to the testimony of his committee of diagnoses during his trial for predatory criminal sexual assault of his young daughter. As this court has made clear, defendant would have to show both strickling prongs. It is defendant's burden to show that his counsel performed deficiently. Defendant has failed to do so because the evidence was admissible under multiple independent theories. And defendant would also have to show prejudice, and he has failed to do so because there is no reasonable probability of acquittal, even if all the evidence of chlamydia had been excluded, because there was defendant's confession to the conduct which matched the victim's account. And defendant was not there at trial to contest these matching accounts. Now, turning to the first strickling prong, deficient performance, it is important to recognize that we analyze this question from the defendant's, from counsel's perspective at the time, and we do so deferentially. Now, in this case, the testimony of multiple people was not even subject to the, multiple witnesses was not subject to the privilege because those witnesses were not treating physicians. As the questions from the court have brought up, defendant in 2016 did not pursue, he was not tested based on a desire for treatment for symptoms. Instead, he went pursuant to the requirements of the DCFS investigation. And so Susanna Guzman, the medical professional who tested him, was not doing so pursuant to his seeking treatment, but pursuant to the DCFS investigation. And to make one thing clear, this isn't even a matter of waiver or not. This is a matter of whether the privilege was relevant in the first place, and it is not so because Guzman was not a treating physician. The situation was different in 2013. That's correct. So we have two different, we have 2013 and 2016. But, so with respect to the 2016, the testimony there from Guzman is not even, the privilege is not even relevant because it never attached. In 2013, the defendant did go to pursue, pursuant to symptoms seeking treatment. So that's a separate issue. Now, turning to that issue, both the 2013 and the 2016 diagnoses of chlamydia, as again this court's questions have brought up, defendant disclosed that information to police. There's no question, there's no dispute that he acknowledged that he tested positive for chlamydia. In 2013 and 2016, there's no dispute that his confession is admissible. There's no argument that his confession was coerced, and certainly that the confession was admissible. So in that sense, the testimony regarding 2013 and 2016 is admissible without even a question of waiver. But then we turn to waiver, and we turn in that argument to the fact that the disclosure of his diagnoses, in fact, did waive the privilege. Now, defendant argues that somehow that he, the disclosure, he was not specifically told that this was somehow a waiver. It was a waiver of the privilege. But in fact, defendant was given his Miranda warnings. He was told, whatever you say, can and will be used against you in a court of law. You have the right to remain silent. These are warnings that are specifically designed to protect a constitutional right. Certainly they are sufficient enough to give him knowledge of, or provide sufficient proof that he would know that he was waiving just an evidentiary privilege, which is not as, which we construe narrowly, because it gets in the way of the truth-seeking functions of the court. So defendant did waive the privilege by his disclosure to the police. Now, turning back, again, just very quickly to the 2016 issue of that he did not pursue treatment. Now, defendant argues that somehow because he was treated after the facts, this would somehow retroactively turn into a physician-patient privilege. But that's simply not the case. The question is whether he went to pursue the treatment, not whether he was somehow after the fact treated. The same would be true, again, as the court's questions brought up, for instance, for if there was some kind of urine test for drug screening. If that somehow then showed up some other sort of medical problem for which defendant was treated, that would not somehow retroactively turn the fact that he submitted to this testing into a physician-patient privilege. And that's what happened here in 2016. So both of the diagnoses, the 2013 and the 2016 diagnoses, were admissible, before we even turn to the statutory exceptions. But then we turn to the statutory exceptions, and we have Section 7, which states that the person who is not a physician-patient is not a physician-patient. And that the privilege does not apply in actions, quote, civil or criminal arising from the filing of a report in compliance with ANCRA. And under the plain language of the exception, that applies to criminal acts arising from the filing of a report in compliance with ANCRA. And this was such an action. Now, notably, defendants in arguing to this court how it should constitute the statute did not focus on the plain language of the statute, but focused on defendants' perception of what the proper balance is between the legislature's desire to prevent and punish abuse of children and to promote patient disclosures for medical treatment. But the question is, what does the statute say? And the statute says it arises in criminal actions arising from the filing of a report in compliance with ANCRA. And it does not, as defendant wishes to read the statute, that the language arising from the filing of a report in compliance with ANCRA does not instead modify the word information, which is separated from that phrase by six subsections, two dependent clauses, and 16 commas. Instead, it modifies civil or criminal actions. But turning to the purpose of the statute and the privilege, even in that case, the legislature is certainly reasonable in deciding that the proper balance is that physician-patient disclosure. And that physician-patient communications will be privileged. But that privilege will not extend to actions, to criminal actions, which arise from the filing of the report of child abuse. Certainly, the legislature was reasonable in determining that that is a valuable and important basis in which to override the privilege in that case. Again, counsel was reasonable, did not perform deficiently in deciding that it was better not to focus on objecting, which would only show the importance of the testimony, because the testimony was admissible in multiple ways from multiple witnesses. Now, defendant has also failed to establish the prejudice prong of Strickland, because he has not shown that there was a reasonable probability of acquittal, even if all the evidence of the chlamydia diagnoses had been excluded. So again, to quickly sum up, there would have been the evidence of defendant's confession, and there would have been the evidence of defendant's acquittal. And the matching testimony of the victim. Now, defendant argues, essentially, that the testimony regarding the chlamydia diagnoses was powerful evidence, that multiple witnesses testified to it, and that's certainly true. It was powerful evidence against him. But that doesn't mean that the other evidence against him was not also powerful and, in fact, overwhelming. Again, there's the confession, there's the matching testimony. There's no — defendant is not there to contradict these matching accounts. And so there's simply no probability — Should we consider that, the defendant was tried in absentia? Well, it's not that this Court should hold that against him in the sense that — I mean, he's still entitled. Of course, the State has to prove beyond reasonable doubt. But given the facts of this case, the question is, yes, whether, in this circumstance, he could show prejudice. And he can't, because he wasn't there to contest these cases. But even if he had been there, he's never — there's been no proffer that he somehow would have contested these matters, his confession. And even if he had somehow been there and had got up on the stand and had testified, there still would be no reasonable probability of acquittal just based on his bald — changing his story years after the fact in this case. He had confessed to police and, again, that matched the testimony of the witness — of the victim, excuse me. And so in this case, defendant has failed to demonstrate either Strickland — either Strickland prong. And unless this Court has any further questions, we would ask this Court to affirm the judgment. Thank you very much. Counsel in the bottom. Thank you. So opposing counsel made a point about the 2016 test results, that the privilege — it's not that the privilege was waived, but that it did not apply to begin with. And I think the notion that the privilege is implicable where the patient receives medical care for a nonmedical purpose stems from case law that the patient has, through their conduct, waived entitlement to confidentiality when they act in a way that is inconsistent with an intent to keep their information confidential, when the patient is seeking care to effectuate some nonmedical purpose in which their medical information will be shared with others. So that's where waiver — that's why I'm speaking about the 2016 test results in terms of waiver, because that is the underlying principle with respect to Nurse Guzman. But this Court has held that a waiver has to be intentional. It has to be knowing. And, again, in the instance in which we have Mr. Torres receiving treatment from Nurse Guzman, but then he is supposed to know that she is not a treating provider, I don't think that you can find from those circumstances a knowing waiver. And part of what would have played into his expectation, I think, that some privacy would have still been maintained over his STD test results is the strong privacy interest that our legislature has recognized and what it has acknowledged is the uniquely sensitive and stigmatizing nature of STDs. I mean, Illinois has enacted stringent standards of confidentiality to prevent the public disclosure of STD status, and given that, I think Mr. Torres reasonably could have assumed his STD results would have remained confidential or perhaps limited to DCFS records, but would not necessarily have understood that acquiescing to this request for testing would just completely blow through his privilege in any future type of proceedings against him. With respect to the waiver the State says occurs with respect to Mr. Torres' disclosures to the police, a general Miranda warning that his statements could be used against him at trial would not be enough to put him on notice that he would also be waiving the right to prevent his medical providers from testifying at trial. That relates to his statements, but I don't know that that relates to whether he could prevent his medical providers from testifying at trial. And I do think that because his statements did not waive his privilege, there's a chance that had counsel prevailed on a motion to exclude, that even his statements to the police about his medical information may have been redacted had counsel prevailed on that motion. Now, with respect to Section 88027, the State says that the interpretation it urges is the plain meaning without even acknowledging that there's this other district, appellate district that has arrived at a different meaning. And that's because we have two plausible meanings from the plain language of the provision in 88027. And I don't think that the interpretation used by the third district results in some sort of strained or unusual usage of the statutory text, and I don't think that's the case. I mean, I think you do hear in common parlance that usage of information coming out of a report or arising from a report or document. So when this Court has two competing interpretations, this Court does have to look at which interpretation is the one that reasonably gives effect to both legislative intents, the one of the purpose and of the exception. A quick point about counsel's argument regarding the fact that we don't know whether, because this was tried in absentia, we don't know what he would have wanted. But counsel absolutely has an obligation to exclude damaging evidence where there is a basis to do so. So I don't think the fact that he was tried in absentia really has much bearing on our analysis here. Counsel has that obligation to exclude damaging evidence either way when there is a legal basis to do so. Lastly, I want to, I just want to point out that even if this Court finds the privilege did not apply to the 2016 test results or that Mr. Torres waived applicability of the privilege somehow, the 2013 test results should not have come in where they were completely unconnected to a DCFS investigation. And I think that by itself would constitute reversible error because the 2013 tests are the one that related to the charge to conduct. 2016 was just brought in as other crimes evidence. Were there any other questions that I could answer for this Court? Then for the reasons argued here, we ask that you reverse and remand for a new trial. Thank you very much. For argument, this is agenda number 5, number 129287, People of the State of Illinois v. Romano Torres, and this case will be taken under advisement.